IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS LEVI RIANTO,<br><br>        Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | 1:12 - CV - 0516  AWI SKI<br>(1:01 - CR - 5063 AWI)<br><br>ORDER ON PETITIONER'S REQUEST FOR WRIT OF CORAM NOBIS |

## INTRODUCTION

Petitioner Nicholas Levi Rianto ("Petitioner") was convicted in 2001 by plea of guilty to one count of violation of 18 U.S.C. § 1028(a)(7) and one count of 18 U.S.C § 1341 and was sentenced to a total term of imprisonment of twelve months and one day.  Following a remand to custody in 2005 for violation of terms and conditions of supervised release, Petitioner's case was terminated 2005.  A petition to correct, vacate or set aside the sentence pursuant to 28 U.S.C. § 2255 that was filed by Petitioner on February 7, 2011, was denied as untimely.  However, in the order denying Petitioner's 2255 motion, the court granted leave to file a writ of coram nobis. The instant request for writ of coram nobis was filed on April 4, 2012.  In his application for writ of coram nobis, Petitioner alleges he suffered ineffective assistance of counsel when his attorney erroneously advised Petitioner that a sentence of less than one year of actual time served would not have negative consequences on Petitioner's alien residence status.  Plaintiff also alleges his attorney did not advise that a restitution order in excess of $10,000 would result in a classification of his conviction as an aggravated felony resulting in Petitioner's reclassification as

removable.  For the reasons that follow, the court will find that Petitioner has stated a claim for relief that is sufficient to require response by the government.

## FACTUAL AND PROCEDURAL HISTORY

This case commenced on February 15, 2001, when an indictment alleging 38 counts of identity theft to fraudulently obtain credit was filed.  Petitioner was convicted by plea of guilty to two counts of identity theft and two counts of mail fraud on June 4, 2001.  Petitioner was sentenced to one year plus one day of imprisonment and was ordered to pay restitution in the amount of $10,555.37.  The court's order of judgment and commitment was filed on September 13, 2002.  Petitioner alleges the actual time served on his original sentence was less than twelve months. Petitioner was arrested for violation of the terms of supervised release on September 17, 2004, and again on July 13, 2005.  With regard to each violation of supervised release Petitioner was remanded to custody for a period of eight months.  The last order of judgment and commitment was filed on September 8, 2005.  The court calculates Petitioner was finally released from custody arising from his 2001 conviction sometime before the end of May 2006. On February 7, 2011, filed a motion for habeas relief pursuant to 28 U.S.C. § 2255 (the "2255Motion").  On February 22, 2012, the court issued an order denying Plaintiff's 2255 Motion as untimely and granting leave to file a writ of coram nobis (the "February 22 Order").

Petitioner states he applied to renew his Lawful Permanent Resident Card on April 16, 2009, and that the renewal was granted by DHS on July 7, 2009.  Petitioner was detained for deportation on October 14, 2010, over one year from the renewal date of his resident card and almost ten years after his conviction.  Through the instant motion for relief pursuant to a writ of error coram nobis, Petitioner seeks to essentially modify his sentence after the fact to impose a term of custody equal to the actual time Petitioner was imprisoned, which is less than one year, and to reduce the amount of restitution to less than $10,000.  Petitioner's apparent goal is to restructure the sentence imposed so as to remove him from the category of persons now subject to mandatory deportation.

**LEGAL STANDARD**

"The writ of error coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody." Estate of McKinney By & Through McKinney v. United States, 71 F.3d 779, 781 (9th Cir.1995). "The writ provides a remedy for those suffering from the 'lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact' and 'egregious legal errors.'" United States v. Walgren, 885 F.2d 1417, 1420 (9th Cir.1989) (quoting Yasai v. United States, 772 F.2d 1496, 1498, 1499 & n. 2 (9th Cir.1985). The writ permits a court to vacate its judgment when an error has occurred that is of the most fundamental character such that the proceeding itself is rendered invalid. McKinney, 71 F.3d at 781. The Supreme Court and Ninth Circuit have "long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." United States v. Riedl, 496 F.3d 1003, 1005 (9th Cir.2007).

To qualify for error coram nobis relief, four requirements must be satisfied: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction to satisfy the case or controversy requirement of Article III, and (4) the error is of the most fundamental character. Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir.1987).

**DISCUSSION**

The court's February 22 Order briefly addressed the four requirements for error coram nobis relief based on allegations set forth in Petitioner's 2255 Motion and concluded that Petitioner's allegations satisfied the first and third requirements. Those conclusions are incorporated here by reference and need not be discussed further. What remains to be considered is whether a valid reason exists for not attacking the conviction earlier and whether the alleged error is of the most fundamental character. The court addresses the second issue first.

**I. Fundamental Legal Error**

A coram nobis petitioner may show fundamental error by establishing that he received ineffective assistance of counsel. United States v. Kwan, 407 F.3d 1005, 1014 (9th Cir. 2005). In this case, Petitioner alleges he received ineffective assistance of counsel when his attorney failed to warn petitioner that he would likely be subject to deportation if he entered into the plea agreement proposed by the Government. To determine if Petitioner suffered ineffective assistance of counsel, the court applies the standards established by Strickland v. Washington, 466 U.S. 668 (1984). The two-pronged test established by Strickland requires that the petitioner claiming ineffective assistance of counsel show that (1) his counsel's performance fell below an objective standard of reasonableness, id. at 688, and (2) that there exists "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

   *A. Objective Standard*

In Padilla v. Kentucky, — U.S. —, 130 S.Ct. 1473 (2010), the Supreme Court articulated the objective standard pertaining to a counsel's duty to advise the non-citizen client of the risk of deportation. 130 S.Ct. At 1482-1483. At the time Padilla was decided, applicable Ninth Circuit authority held that an attorney did not have the duty to advise his non-citizen client of the possible effects of conviction on his residency status "because deportation was simply a 'collateral consequence' of the plea." United States v. Bonilla, 637 F.3d 980, 982 (9th Cir. 2011) (quoting United States v. Amador-Leal, 276 F.3d 511, 514-515 (9th Cir. 2002)). Thus, for jurisdictions such as the Ninth Circuit, Padilla announced a new constitutional standard with regard to a counsel's duty to inform her client of immigration consequences arising from a proceeding. In Bonilla, the Ninth Circuit applied the standard set in Padilla because the case was pending on direct review at the time Padilla was decided. Bonilla, 637 F.3d at 983. Based on language in Padilla and the Ninth Circuit's application of Padilla in Bonilla, this court has applied the rule in Padilla retroactively. See United States v. Krboyan, 2011 WL 2117023 (E.D.

Cal. 2011) at *8 (applying <u>Padilla</u> for purposes of analysis of ineffective assistance of counsel where defendant entered a plea of guilty in 2006).  For purposes of this analysis, the court will follow its decision in <u>Krboyan</u> for the reasons discussed therein.  The court therefore concludes that, pursuant to <u>Padilla</u>, the objective standard applicable at the time of Petitioner's entry of his plea of guilty required that Petitioner's attorney advise him of the likely consequences of his plea of guilty on his residency status.

The standard established by <u>Padilla</u> has two aspects.  First, <u>Padilla</u> establishes an affirmative duty to provide information pertaining to immigration consequences for non-citizen clients.  In other words, ineffective assistance may be found not only where factually inaccurate advice is given, but also where no advice is given where that advice would reasonably be relevant to the defendant's decision to proceed to trial or enter a plea.  130 S.Ct. at 1484-1485.  Second, the <u>Padilla</u> court recognized the complexity of immigration law and tempered the duty of providing information on immigration consequences as follows:

> Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it.  There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain.  The duty of the private practitioner in such cases is more limited.  When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice Alito), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.  But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

130 S.Ct. at 1483.

Although the <u>Padilla</u> Court recognized the dramatic shift in immigration policy between 1900 and 1996, <u>id.</u> at 1480, the Court noted that where statutory provisions "are succinct, clear, and explicit in defining the removal consequences," of a plea of guilty, an attorney is guilty of providing constitutionally erroneous information if she opines that negative immigration consequences of a plea are unlikely when the statutory text clearly indicates otherwise.  <u>Id.</u> at 1483.  In 1988 Congress specified that an alien is "deportable upon conviction for any 'aggravated felony.'  Anti-Drug Abuse Act of 1988, 102 Stat. 4469-4470, § 1227(a)(2)(A)(iii),

5

which was defined to include numerous offenses without regard to how long ago they were committed." INS v. St. Cyr, 533 U.S. 289, 295 (2001). In 1996, Congress passed both the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214, and the Illegal Immigration Reform and Immagrant Responsibility Act of 1996 ("IIRIRA"), 110 Stat. 3009-546. Both enactments substantially amended the Immigration and Nationality Act, 8 U.S.C. §§ 1101 et seq. St. Cyr., 533 U.S. at 292. First, the AEDPA disqualified from discretionary relief from deportation (which had previously been available under section 212(c) of the Immigration and Nationality Act) anyone who had been convicted of any aggravated felony. See id. at 297 (noting the effect of amendments under AEDPA that very much narrowed the category of deportable aliens whose deportation could be canceled at the discretion of the Attorney General and that specifically excluded any convicted of an aggravated felony). Second, the IIRIRA amended the Immigration and Nationality Act to classify as an aggravated felony any offense of "fraud or deceit in which the loss to the victim exceeds $10,000 (as opposed to $200,000 pre-IIRIRA)." Id. at 296 n.4; 8 U.S.C. § 1101(a)(43)(M).

The upshot of this is that, as of 1996, the statutory scheme clearly designated Petitioner as subject to deportation without recourse to discretionary cancellation of removal proceedings upon conviction of mail fraud and identity theft where the losses assessed exceeded $10,000. Given the clarity of the immigration consequences of the plea, Petitioner's attorney had the affirmative duty under Padilla to advise Petitioner that he would be subject to removal without recourse to discretionary relief by the Attorney General as a consequence of his plea. Petitioner alleges he and his family repeatedly raised the issue of the consequences of immigration status with Petitioner's attorney. Petitioner alleges his attorney acknowledged he was aware the indictment might carry immigration consequences and that he would inquire of another attorney that was more familiar with immigration law. According to Petitioner, his "attorney informed Petitioner that serving an actual imprisonment less tha[n] twelve months (approximately 10 months) from sentence of twelve months and one day will not affect immigration and will help

6

with immigration, which are [sic] contrary to reality." Doc. # 1 at 2:19-21.  Further, Petitioner alleges his "attorney also failed to advise the Petitioner that a plea that indicate [sic] [an] aggregated value loss of $10,555.37 exceeding the $10,000 limit in the immigration context will therefore subject Petitioner to automatic deportation because it will be classified as and aggravated felony.

The court concludes Petitioner's allegations are sufficient to support a claim that his attorney's performance fell below the objective standard established by Padilla as applied retroactively under the circumstances of this case.

### B. Prejudice

The prejudice prong of the Strickland analysis requires that a petitioner show that, but for counsel's unprofessional errors, there is a reasonable probability "the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  Although Petitioner's pleading is a little vague as to the prejudice he suffered, it is clear that there are two concerns.  First and foremost, Petitioner contends that, but for his counsel's errors, Petitioner's very substantial interest in avoiding deportation would have been represented in plea negotiations and would have resulted in a plea agreement whose terms were adjusted only slightly so as to have avoided the immigration consequences Petitioner now faces.  Second, Petitioner contends he suffered prejudice from his counsel's error because if he had been accurately informed of the immigration consequences of the plea as presented to him, he would have elected to go to trial.

The Ninth Circuit case of United States v. Kwan, 407 F.3d 1005 (9th Cir. 2005), *abrogated on other grounds by* Padilla, 130 S.Ct. 1473, bears a remarkable factual similarity to the case at bar.  In Kwan, the defendant entered a plea of guilty to two counts of bank fraud.  Id. at 1008.  Pursuant to the plea agreement, the defendant in Kwan was sentenced to a term of imprisonment of one year and one day and ordered to pay restitution in the sum of $10,000.  Id. at 1009.  The defendant in Kwan alleged that he entered into the plea agreement at least partly in

reliance on the representation of his counsel that the sentence bargained for would have no immigration consequences. Id. at 1008, 1016. Of particular relevance to this court's decision regarding prejudice under the Strickland analysis, the Kwan court reasoned as follows in deciding that the defendant satisfied the prejudice prong:

> [A] sentencing court may exercise its discretion to permit a defendant to withdraw his guilty plea prior to sentencing if the defendant shows a fair and just reason for requesting the withdrawal. Fed.R.Crim.P. 32(e) (1996). There is a reasonable probability that the sentencing court in this case would have considered the significant change in the immigration consequences of Kwan's plea to be a fair and just reason for withdrawing his plea. While the sentencing court's decision to grant or deny a motion to withdraw is discretionary, "to show prejudice [a petitioner] need only show 'a probability sufficient to undermine confidence in the outcome'" that he would have withdrawn his plea. United States v. Leonti, 326 F.3d 1111, 1122 (9th Cir. 2003) (holding that petitioner could establish prejudice by showing that counsel's deficient performance reduced likelihood that prosecution would make a substantial assistance motion, and the court has discretion in choosing to depart downward"). "A deprivation of an opportunity to have a sentencing court exercise its discretion in a defendant's favor can constitute ineffective assistance of counsel." [United States v. Castro, 26 F.3d 557, 560 (5th Cir. 1994) (holding that counsel's failure to request that sentencing judge exercise its discretion to make judicial recommendation against deportation was prejudicial under Strickland.)

Kwan, 407 F.3d at 1018.

The court cannot determine under the record before it whether the court had discretion under the exact circumstances of this case to structure the sentence in a way that would have avoided the immigration consequences of plea. However, it does appear that in the approximately fifteen months between the filing of the memorandum of plea agreement and the sentencing hearing there were no formal motions filed to address the court's discretion to withdraw the plea or to address apparent immigration issues. In Kwan the Ninth Circuit made clear the proposition that demonstration of prejudice does not require a showing that an outcome more favorable to the petitioner *would have been achieved* but for the counsel's errors; rather, all that is necessary is a showing that the *opportunity was lost* to plead for an outcome that is not outside the realm of the court's discretion to accommodate. Id.. The court concludes Petitioner has adequately stated facts that, if proven, would be sufficient to show prejudice.

Petitioner has adequately stated a claim for ineffective assistance of counsel arising from

1  the failure of his attorney to adequately and accurately inform Petitioner of the immigration
2  consequences of his plea of guilty.  The court follows Padilla and similar cases in finding that
3  Petitioner's allegation of ineffective assistance of counsel is sufficient to satisfy the requirement
4  for a showing of fundamental legal error to establish a claim for relief by way of writ of error
5  coram nobis.

**II. Timeliness**

A petition for writ of coram nobis is not subject to a specific statute of limitations.  Id. at 1012 (citing Telink, Inc. v. United States, 24 F.3d 42, 45 (9th Cir. 1994).  Rather, petitioners for writ of coram nobis are required "to provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier."  Id.  Although the writ of coram nobis is subject to the doctrine of laches, the timeliness requirement of the writ operates differently from laches.  United States v. Riedl, 496 F.3d 1003, 1008 (9th Cir. 2007).  The timeliness requirement of the writ of error coram nobis places a burden on the Petitioner to affirmatively demonstrate valid reasons why the challenge was not brought sooner.  Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987) (requiring that "valid reasons exist for not attacking the conviction earlier.").  Prejudice to the government is not a factor in determining the existence of valid reasons for not attacking the conviction earlier.  Riedl, 496 F.3d at 1007-1008.  *If* the petitioner succeeds in alleging facts to demonstrate valid reason the petition was not brought sooner, then the government may seek to bar the petition on the ground of laches.  Under the doctrine of laches, the defendant (government) "first must make a prima facie showing of prejudice . . . .  If the government meets that burden , the burden of production of evidence then shifts to the petitioners to show either that the government actually was not prejudiced or that the petitioner exercised reasonable diligence in filing the claim."  Telink 24 F.3d at 47.

Kwan establishes that the erroneous representations of counsel reassuring the Petitioner that immigration consequences would not likely attach to the petitioner's conviction is, absent any showing that the petitioner had reason to believe otherwise, a valid reason for not bring the

9

action sooner. Kwan 407 F.3d at 1013-1014. The facts, so far as they have been alleged in Petitioner's pleading, disclose no reason Petitioner should have challenged his conviction or sentence earlier. It is significant in this regard that Petitioner was actually granted renewal of his alien resident card following his imprisonment. This tends to lend weight to his argument there was no apparent reason to understand he had been erroneously informed at the time of his plea or at anytime thereafter until he received notification from immigration officials that he was subject to deportation.

As the court expressed in its February 22 Order, a petition for writ of coram nobis that seeks withdrawal of a plea of guilty that was executed over ten years ago represents a rather long time by the standards of most cases granting such relief. Such a delay is not, however, completely outside the realm of coram nobis relief. See Hirabayashi, 828 F.2d at 605 (refusing argument that laches should preclude 40-year-old claim); Rewak v. United States, 512 F.2d 1184, 1185 (9 Cir. 1975) (granting coram nobis relief for sentencing error ten years after petitioner released from custody). As matters stand at this time, the court finds there is nothing to indicate that Petitioner lacks valid reasons for not having brought the challenge to his conviction earlier. The court lacks information necessary at this time to determine whether laches would apply to preclude Petitioner's claim.

## CONCLUSION AND ORDER

Based on the foregoing discussion, the court finds that Petitioner has set forth facts supporting his petition for writ of coram nobis sufficient to state a claim for relief. The court therefore ORDERS as follows:

1. Petitioner's attorney of record with regard to the plea agreement executed in 2001, Mr. Jack Revvill is hereby ORDERED to submit to the court any information he may have, whether recorded in notes or recollected by himself or others, that may bear upon the issue of what representations were made to Petitioner regarding the immigration consequences of the plea agreement. The Clerk of the Court shall SERVE this order on

Mr. Revvill on the following address:

>Mr. Jack Revvill
>2950 Mariposa Street
>Fresno, CA

Mr. Revvill shall FILE AND SERVE a statement or declaration containing such information not later than twenty-one (21) days from the date of service of this order.

2. Respondent United States is hereby ORDERED to file and serve a responsive pleading to Petitioner's request for writ of coram nobis not later than twenty-one (21) days from the date of service of Mr. Revvill's statement.

3. The court will schedule such further hearings as it deems necessary upon receipt of Mr. Revvill's declaration or statement and Respondent's response.

IT IS SO ORDERED.

Dated:   October 11, 2012

CHIEF UNITED STATES DISTRICT JUDGE

11