1
2
3
4          **IN THE UNITED STATES DISTRICT COURT FOR THE**
5              **EASTERN DISTRICT OF CALIFORNIA**
6

7    **NICHOLAS LEVI RIANTO,**              )    **1:12 - CV - 0516  AWI SKI**
                                            )    **(1:01 - CR - 5063 AWI)**
8                **Petitioner**,            )
                                            )    **ORDER ON PETITIONER'S**
9        **v.**                             )    **REQUEST FOR WRIT OF**
                                            )    **CORAM NOBIS**
10                                          )
     **UNITED STATES OF AMERICA,**          )
11                                          )
                 **Respondent.**            )
12                                          )
                                            )
13   _____      )

14
                         **INTRODUCTION**
15
          Petitioner Nicholas Levi Rianto ("Petitioner") was convicted in 2001 by plea of guilty to
16
     one count of violation of 18 U.S.C. § 1028(a)(7) and one count of 18 U.S.C § 1341 and was
17
     sentenced to a total term of imprisonment of twelve months and one day.  Following a remand to
18
     custody in 2005 for violation of terms and conditions of supervised release, Petitioner's case was
19
     terminated 2005.  A petition to correct, vacate or set aside the sentence pursuant to 28 U.S.C. §
20
     2255 that was filed by Petitioner on February 7, 2011, was denied as untimely.  However, in the
21
     order denying Petitioner's 2255 motion, the court granted leave to file a writ of coram nobis.
22
     The instant request for writ of coram nobis was filed on April 4, 2012.  In his application for writ
23
     of coram nobis, Petitioner alleges he suffered ineffective assistance of counsel when his attorney
24
     erroneously advised Petitioner that a sentence of less than one year of actual time served would
25
     not have negative consequences on Petitioner's alien residence status.  Plaintiff also alleges his
26
     attorney did not advise that a restitution order in excess of $10,000 would result in a
27
     classification of his conviction as an aggravated felony resulting in Petitioner's reclassification as
28

1 removable.  For the reasons that follow, the court will find that Petitioner has stated a claim for

2 relief that is sufficient to require response by the government.

3 **FACTUAL AND PROCEDURAL HISTORY**

4 This case commenced on February 15, 2001, when an indictment alleging 38 counts of

5 identity theft to fraudulently obtain credit was filed.  Petitioner was convicted by plea of guilty to

6 two counts of identity theft and two counts of mail fraud on June 4, 2001.  Petitioner was

7 sentenced to one year plus one day of imprisonment and was ordered to pay restitution in the

8 amount of $10,555.37.  The court's order of judgment and commitment was filed on September

9 13, 2002.  Petitioner alleges the actual time served on his original sentence was less than twelve

10 months. Petitioner was arrested for violation of the terms of supervised release on September 17,

11 2004, and again on July 13, 2005.  With regard to each violation of supervised release Petitioner

12 was remanded to custody for a period of eight months.  The last order of judgment and

13 commitment was filed on September 8, 2005.  The court calculates Petitioner was finally

14 released from custody arising from his 2001 conviction sometime before the end of May 2006.

15 On February 7, 2011, filed a motion for habeas relief pursuant to 28 U.S.C. § 2255 (the

16 "2255Motion").  On February 22, 2012, the court issued an order denying Plaintiff's 2255

17 Motion as untimely and granting leave to file a writ of coram nobis (the "February 22 Order").

18 Petitioner states he applied to renew his Lawful Permanent Resident Card on April 16,

19 2009, and that the renewal was granted by DHS on July 7, 2009.  Petitioner was detained for

20 deportation on October 14, 2010, over one year from the renewal date of his resident card and

21 almost ten years after his conviction.  Through the instant motion for relief pursuant to a writ of

22 error coram nobis, Petitioner seeks to essentially modify his sentence after the fact to impose a

23 term of custody equal to the actual time Petitioner was imprisoned, which is less than one year,

24 and to reduce the amount of restitution to less than $10,000.  Petitioner's apparent goal is to

25 restructure the sentence imposed so as to remove him from the category of persons now subject

26 to mandatory deportation.

27

28

1

**LEGAL STANDARD**

2    "The writ of error coram nobis affords a remedy to attack a conviction when the

3 petitioner has served his sentence and is no longer in custody." Estate of McKinney By &

4 Through McKinney v. United States, 71 F.3d 779, 781 (9th Cir.1995).   "The writ provides a

5 remedy for those suffering from the 'lingering collateral consequences of an unconstitutional or

6 unlawful conviction based on errors of fact' and 'egregious legal errors.'"  United States v.

7 Walgren, 885 F.2d 1417, 1420 (9th Cir.1989) (quoting Yasai v. United States, 772 F.2d 1496,

8 1498, 1499 & n. 2 (9th Cir.1985).  The writ permits a court to vacate its judgment when an error

9 has occurred that is of the most fundamental character such that the proceeding itself is rendered

10 invalid. McKinney, 71 F.3d at 781.  The Supreme Court and Ninth Circuit have "long made

11 clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave

12 injustices in a narrow range of cases where no more conventional remedy is applicable." United

13 States v. Riedl, 496 F.3d 1003, 1005 (9th Cir.2007).

14    To qualify for error coram nobis relief, four requirements must be satisfied: (1) a more

15 usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3)

16 adverse consequences exist from the conviction to satisfy the case or controversy requirement of

17 Article III, and (4) the error is of the most fundamental character. Hirabayashi v. United States,

18 828 F.2d 591, 604 (9th Cir.1987).

19

**DISCUSSION**

20    The court's February 22 Order briefly addressed the four requirements for error coram

21 nobis relief based on allegations set forth in Petitioner's 2255 Motion and concluded that

22 Petitioner's allegations satisfied the first and third requirements.  Those conclusions are

23 incorporated here by reference and need not be discussed further.  What remains to be considered

24 is whether a valid reason exists for not attacking the conviction earlier and whether the alleged

25 error is of the most fundamental character.  The court addresses the second issue first.

26

27

28

**I.  Fundamental Legal Error**

A coram nobis petitioner may show fundamental error by establishing that he received ineffective assistance of counsel.  United States v. Kwan, 407 F.3d 1005, 1014 (9th Cir. 2005). In this case, Petitioner alleges he received ineffective assistance of counsel when his attorney failed to warn petitioner that he would likely be subject to deportation if he entered into the plea agreement proposed by the Government.  To determine if Petitioner suffered ineffective assistance of counsel, the court applies the standards established by Strickland v. Washington, 466 U.S. 668 (1984).  The two-pronged test established by Strickland requires that the petitioner claiming ineffective assistance of counsel show that (1) his counsel's performance fell below an objective standard of reasonableness, id. at 688, and (2) that there exists "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

*A.  Objective Standard*

In Padilla v. Kentucky, — U.S. —, 130 S.Ct. 1473 (2010), the Supreme Court articulated the objective standard pertaining to a counsel's duty to advise the non-citizen client of the risk of deportation.  130 S.Ct. At 1482-1483.  At the time Padilla was decided, applicable Ninth Circuit authority held that an attorney did not have the duty to advise his non-citizen client of the possible effects of conviction on his residency status "because deportation was simply a 'collateral consequence' of the plea."  United States v. Bonilla, 637 F.3d 980, 982 (9th Cir. 2011) (quoting United States v. Amador-Leal, 276 F.3d 511, 514-515 (9th Cir. 2002)).  Thus, for jurisdictions such as the Ninth Circuit, Padilla announced a new constitutional standard with regard to a counsel's duty to inform her client of immigration consequences arising from a proceeding.  In Bonilla, the Ninth Circuit applied the standard set in Padilla because the case was pending on direct review at the time Padilla was decided.  Bonilla, 637 F.3d at 983.  Based on language in Padilla and the Ninth Circuit's application of Padilla in Bonilla, this court has applied the rule in Padilla retroactively.  See United States v. Krboyan, 2011 WL 2117023 (E.D.

1    Cal. 2011) at *8 (applying Padilla for purposes of analysis of ineffective assistance of counsel

2    where defendant entered a plea of guilty in 2006).  For purposes of this analysis, the court will

3    follow its decision in Krboyan for the reasons discussed therein.  The court therefore concludes

4    that, pursuant to Padilla, the objective standard applicable at the time of Petitioner's entry of his

5    plea of guilty required that Petitioner's attorney advise him of the likely consequences of his plea

6    of guilty on his residency status.

7         The standard established by Padilla has two aspects.  First, Padilla establishes an

8    affirmative duty to provide information pertaining to immigration consequences for non-citizen

9    clients.  In other words, ineffective assistance may be found not only where factually inaccurate

10   advice is given, but also where no advice is given where that advice would reasonably be relevant

11   to the defendant's decision to proceed to trial or enter a plea.  130 S.Ct. at 1484-1485.  Second,

12   the Padilla court recognized the complexity of immigration law and tempered the duty of

13   providing information on immigration consequences as follows:

14        Some members of the bar who represent clients facing criminal charges, in either
          state or federal court or both, may not be well versed in it.  There will, therefore,
15        undoubtedly be numerous situations in which the deportation consequences of a
          particular plea are unclear or uncertain.  The duty of the private practitioner in
16        such cases is more limited.  When the law is not succinct and straightforward (as
          it is in many of the scenarios posited by Justice Alito), a criminal defense attorney
17        need do no more than advise a noncitizen client that pending criminal charges
          may carry a risk of adverse immigration consequences.  But when the deportation
18        consequence is truly clear, as it was in this case, the duty to give correct advice is
          equally clear.

19   130 S.Ct. at 1483.

20        Although the Padilla Court recognized the dramatic shift in immigration policy between

21   1900 and 1996, id. at 1480, the Court noted that where statutory provisions "are succinct, clear,

22   and explicit in defining the removal consequences," of a plea of guilty, an attorney is guilty of

23   providing constitutionally erroneous information if she opines that negative immigration

24   consequences of a plea are unlikely when the statutory text clearly indicates otherwise.  Id. at

25   1483.  In 1988 Congress specified that an alien is "deportable upon conviction for any

26   'aggravated felony.'  Anti-Drug Abuse Act of 1988, 102 Stat. 4469-4470, § 1227(a)(2)(A)(iii),

27

28                                              5

1  which was defined to include numerous offenses without regard to how long ago they were

2  committed." INS v. St. Cyr, 533 U.S. 289, 295 (2001). In 1996, Congress passed both the

3  Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214, and the Illegal

4  Immigration Reform and Immagrant Responsibility Act of 1996 ("IIRIRA"), 110 Stat. 3009-546.

5  Both enactments substantially amended the Immigration and Nationality Act, 8 U.S.C. §§ 1101

6  et seq. St. Cyr., 533 U.S. at 292. First, the AEDPA disqualified from discretionary relief from

7  deportation (which had previously been available under section 212(c) of the Immigration and

8  Nationality Act) anyone who had been convicted of any aggravated felony. See id. at 297 (noting

9  the effect of amendments under AEDPA that very much narrowed the category of deportable

10  aliens whose deportation could be canceled at the discretion of the Attorney General and that

11  specifically excluded any convicted of an aggravated felony). Second, the IIRIRA amended the

12  Immigration and Nationality Act to classify as an aggravated felony any offense of "fraud or

13  deceit in which the loss to the victim exceeds $10,000 (as opposed to $200,000 pre-IIRIRA)."

14  Id. at 296 n.4; 8 U.S.C. § 1101(a)(43)(M).

15      The upshot of this is that, as of 1996, the statutory scheme clearly designated Petitioner as

16  subject to deportation without recourse to discretionary cancellation of removal proceedings

17  upon conviction of mail fraud and identity theft where the losses assessed exceeded $10,000.

18  Given the clarity of the immigration consequences of the plea, Petitioner's attorney had the

19  affirmative duty under Padilla to advise Petitioner that he would be subject to removal without

20  recourse to discretionary relief by the Attorney General as a consequence of his plea. Petitioner

21  alleges he and his family repeatedly raised the issue of the consequences of immigration status

22  with Petitioner's attorney. Petitioner alleges his attorney acknowledged he was aware the

23  indictment might carry immigration consequences and that he would inquire of another attorney

24  that was more familiar with immigration law. According to Petitioner, his "attorney informed

25  Petitioner that serving an actual imprisonment less tha[n] twelve months (approximately 10

26  months) from sentence of twelve months and one day will not affect immigration and will help

27

28                                        6

1   with immigration, which are [sic] contrary to reality." Doc. # 1 at 2:19-21.  Further, Petitioner

2   alleges his "attorney also failed to advise the Petitioner that a plea that indicate [sic] [an]

3   aggregated value loss of $10,555.37 exceeding the $10,000 limit in the immigration context will

4   therefore subject Petitioner to automatic deportation because it will be classified as and

5   aggravated felony.

6        The court concludes Petitioner's allegations are sufficient to support a claim that his

7   attorney's performance fell below the objective standard established by Padilla as applied

8   retroactively under the circumstances of this case.

9        **B.  Prejudice**

10       The prejudice prong of the Strickland analysis requires that a petitioner show that, but for

11   counsel's unprofessional errors, there is a reasonable probability "the result of the proceeding

12   would have been different.  A reasonable probability is a probability sufficient to undermine

13   confidence in the outcome." Strickland, 466 U.S. at 694.  Although Petitioner's pleading is a

14   little vague as to the prejudice he suffered, it is clear that there are two concerns.  First and

15   foremost, Petitioner contends that, but for his counsel's errors, Petitioner's very substantial

16   interest in avoiding deportation would have been represented in plea negotiations and would have

17   resulted in a plea agreement whose terms were adjusted only slightly so as to have avoided the

18   immigration consequences Petitioner now faces.  Second, Petitioner contends he suffered

19   prejudice from his counsel's error because if he had been accurately informed of the immigration

20   consequences of the plea as presented to him, he would have elected to go to trial.

21       The Ninth Circuit case of United States v. Kwan, 407 F.3d 1005 (9th Cir. 2005),

22   *abrogated on other grounds by* Padilla, 130 S.Ct. 1473, bears a remarkable factual similarity to

23   the case at bar.  In Kwan, the defendant entered a plea of guilty to two counts of bank fraud.  Id.

24   at 1008.  Pursuant to the plea agreement, the defendant in Kwan was sentenced to a term of

25   imprisonment of one year and one day and ordered to pay restitution in the sum of $10,000.  Id.

26   at 1009.  The defendant in Kwan alleged that he entered into the plea agreement at least partly in

27

28                                7

1    reliance on the representation of his counsel that the sentence bargained for would have no

2    immigration consequences.  Id. at 1008, 1016.  Of particular relevance to this court's decision

3    regarding prejudice under the Strickland analysis, the Kwan court reasoned as follows in

4    deciding that the defendant satisfied the prejudice prong:

5            [A] sentencing court may exercise its discretion to permit a defendant to withdraw
             his guilty plea prior to sentencing if the defendant shows a fair and just reason for
6            requesting the withdrawal.  Fed.R.Crim.P. 32(e) (1996).  There is a reasonable
             probability that the sentencing court in this case would have considered the
7            significant change in the immigration consequences of Kwan's plea to be a fair
             and just reason for withdrawing his plea.  While the sentencing court's decision to
8            grant or deny a motion to withdraw is discretionary, "to show prejudice [a
             petitioner] need only show 'a probability sufficient to undermine confidence in the
9            outcome'" that he would have withdrawn his plea.  United States v. Leonti, 326
             F.3d 1111, 1122 (9th Cir. 2003) (holding that petitioner could establish prejudice
10           by showing that counsel's deficient performance reduced likelihood that
             prosecution would make a substantial assistance motion, and the court has
11           discretion in choosing to depart downward").  "A deprivation of an opportunity to
             have a sentencing court exercise its discretion in a defendant's favor can
12           constitute ineffective assistance of counsel." [United States v. Castro, 26 F.3d
             557, 560 (5th Cir. 1994) (holding that counsel's failure to request that sentencing
13           judge exercise its discretion to make judicial recommendation against deportation
             was prejudicial under Strickland.)
14
     Kwan, 407 F.3d at 1018.
15
             The court cannot determine under the record before it whether the court had discretion
16
     under the exact circumstances of this case to structure the sentence in a way that would have
17
     avoided the immigration consequences of plea.  However, it does appear that in the
18
     approximately fifteen months between the filing of the memorandum of plea agreement and the
19
     sentencing hearing there were no formal motions filed to address the court's discretion to
20
     withdraw the plea or to address apparent immigration issues.  In Kwan the Ninth Circuit made
21
     clear the proposition that demonstration of prejudice does not require a showing that an outcome
22
     more favorable to the petitioner *would have been achieved* but for the counsel's errors; rather, all
23
     that is necessary is a showing that the *opportunity was lost* to plead for an outcome that is not
24
     outside the realm of the court's discretion to accommodate.  Id..  The court concludes Petitioner
25
     has adequately stated facts that, if proven, would be sufficient to show prejudice.
26
             Petitioner has adequately stated a claim for ineffective assistance of counsel arising from
27

28                                                   8

1   the failure of his attorney to adequately and accurately inform Petitioner of the immigration

2   consequences of his plea of guilty.  The court follows Padilla and similar cases in finding that

3   Petitioner's allegation of ineffective assistance of counsel is sufficient to satisfy the requirement

4   for a showing of fundamental legal error to establish a claim for relief by way of writ of error

5   coram nobis.

6   **II.  Timeliness**

7       A petition for writ of coram nobis is not subject to a specific statute of limitations.  Id. at

8   1012 (citing Telink, Inc. v. United States, 24 F.3d 42, 45 (9th Cir. 1994).  Rather, petitioners for

9   writ of coram nobis are required "to provide valid or sound reasons explaining why they did not

10  attack their sentences or convictions earlier."  Id.  Although the writ of coram nobis is subject to

11  the doctrine of laches, the timeliness requirement of the writ operates differently from laches.

12  United States v. Riedl, 496 F.3d 1003, 1008 (9th Cir. 2007).  The timeliness requirement of the

13  writ of error coram nobis places a burden on the Petitioner to affirmatively demonstrate valid

14  reasons why the challenge was not brought sooner.  Hirabayashi v. United States, 828 F.2d 591,

15  604 (9th Cir. 1987) (requiring that "valid reasons exist for not attacking the conviction earlier.").

16  Prejudice to the government is not a factor in determining the existence of valid reasons for not

17  attacking the conviction earlier.  Riedl, 496 F.3d at 1007-1008.  *If* the petitioner succeeds in

18  alleging facts to demonstrate valid reason the petition was not brought sooner, then the

19  government may seek to bar the petition on the ground of laches.  Under the doctrine of laches,

20  the defendant (government) "first must make a prima facie showing of prejudice . . . .  If the

21  government meets that burden , the burden of production of evidence then shifts to the petitioners

22  to show either that the government actually was not prejudiced or that the petitioner exercised

23  reasonable diligence in filing the claim."  Telink 24 F.3d at 47.

24      Kwan establishes that the erroneous representations of counsel reassuring the Petitioner

25  that immigration consequences would not likely attach to the petitioner's conviction is, absent

26  any showing that the petitioner had reason to believe otherwise, a valid reason for not bring the

27

28                                               9

1   action sooner.  Kwan 407 F.3d at 1013-1014.  The facts, so far as they have been alleged in

2   Petitioner's pleading, disclose no reason Petitioner should have challenged his conviction or

3   sentence earlier.  It is significant in this regard that Petitioner was actually granted renewal of his

4   alien resident card following his imprisonment.  This tends to lend weight to his argument there

5   was no apparent reason to understand he had been erroneously informed at the time of his plea or

6   at anytime thereafter until he received notification from immigration officials that he was subject

7   to deportation.

8         As the court expressed in its February 22 Order, a petition for writ of coram nobis that

9   seeks withdrawal of a plea of guilty that was executed over ten years ago represents a rather long

10  time by the standards of most cases granting such relief.  Such a delay is not, however,

11  completely outside the realm of coram nobis relief.  See Hirabayashi, 828 F.2d at 605 (refusing

12  argument that laches should preclude 40-year-old claim); Rewak v. United States, 512 F.2d 1184,

13  1185 (9 Cir. 1975) (granting coram nobis relief for sentencing error ten years after petitioner

14  released from custody).  As matters stand at this time, the court finds there is nothing to indicate

15  that Petitioner lacks valid reasons for not having brought the challenge to his conviction earlier.

16  The court lacks information necessary at this time to determine whether laches would apply to

17  preclude Petitioner's claim.

### CONCLUSION AND ORDER

19        Based on the foregoing discussion, the court finds that Petitioner has set forth facts

20  supporting his petition for writ of coram nobis sufficient to state a claim for relief.  The court

21  therefore ORDERS as follows:

22  1.    Petitioner's attorney of record with regard to the plea agreement executed in 2001, Mr.

23        Jack Revvill is hereby ORDERED to submit to the court any information he may have,

24        whether recorded in notes or recollected by himself or others, that may bear upon the

25        issue of what representations were made to Petitioner regarding the immigration

26        consequences of the plea agreement.  The Clerk of the Court shall SERVE this order on

1    Mr. Revvill on the following address:

2         Mr. Jack Revvill
          2950 Mariposa Street
3         Fresno, CA

4    Mr. Revvill shall FILE AND SERVE a statement or declaration containing such

5    information not later than twenty-one (21) days from the date of service of this order.

6    2.    Respondent United States is hereby ORDERED to file and serve a responsive pleading to

7          Petitioner's request for writ of coram nobis not later than twenty-one (21) days from the

8          date of service of Mr. Revvill's statement.

9    3.    The court will schedule such further hearings as it deems necessary upon receipt of Mr.

10         Revvill's declaration or statement and Respondent's response.

11

12   IT IS SO ORDERED.

13

     Dated:    October 11, 2012                    _____
14                                                 CHIEF UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      11