UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS LEVI RIANTO,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent | No.  1:12-cv-00516-DAD-SKO<br><br><br>ORDER DENYING RESPONDENT'S MOTION TO DISMISS<br><br>(Doc. Nos. 1, 19) |

This matter is before the court on respondent's motions to dismiss petitioner Nicholas Rianto's petition for a writ of coram nobis, and for reconsideration of this court's October 12, 2012 order.  (Doc. No. 19.)

**JURISDICTION**

The court has jurisdiction pursuant to 28 U.S.C. § 1331 and the All Writs Act, 28 U.S.C. § 1651.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Nichols Levi Rianto ("petitioner") is a native and citizen of Indonesia who was a permanent alien resident of the United States.[1]  On June 4, 2001, pursuant to a plea agreement,

---

[1]  In its pending motions, respondent attaches the executed warrant of removal for petitioner, taken from his alien immigration file ("A-file"), which indicates that petitioner entered the United States on July 1, 1999.  (Doc. No. 19-1 at 72.)

1

petitioner entered pleas of guilty to two counts of unauthorized use of the identification of another in violation of 18 U.S.C. § 1028(a)(7) and two counts of mail fraud in violation of 18 U.S.C § 1341. (*See United States v. Nichols Rianto*, Case No. 1:01-cr-05063-AWI, Doc. Nos. 11, 12.) On September 9, 2002, pursuant to his pleas of guilty, petitioner was finally sentenced to a concurrent term of imprisonment of twelve months and one day, a three year concurrent term of supervised release to follow, a $400 mandatory penalty assessment and ordered to pay restitution in the amount of $10,555.37. (*See* Doc. No. 3 at 2; *see also United States v. Rianto*, No. 1:01-cr-05063-AWI, Doc. Nos. 31, 32.) After his initial release from confinement, petitioner was subsequently remanded into to custody for an additional eight months on February 22, 2005 and for an additional five months on September 6, 2005, both times for having violated the terms and conditions of his supervised release, with petitioner eventually being released from federal custody for the final time before the end of May 2006. (*See* Doc. No. 3 at 2; *see also United States v. Rianto*, No. 1:01-cr-05063-AWI, Doc. Nos. 50, 60.).

Petitioner alleges that he applied for and was granted renewal of his Lawful Permanent Resident Card in 2009. (Doc. No. 1 at 4–5.) However, on October 14, 2010, he was detained for deportation.[2] (*Id.* at 5.)

Following his 2010 detention, petitioner has attempted to collaterally attack the sentence imposed in the underlying federal criminal action, thereby seeking to remove himself from the category of persons subject to mandatory deportation. In this regard, on February 7, 2011, petitioner filed a motion under 28 U.S.C. § 2255 to correct, vacate or set aside his sentence. (*Id.*) The court denied that motion as untimely, but granted petitioner leave to file a petition for a writ of coram nobis. (*Id.*)

On April 4, 2012, petitioner filed the instant writ of coram nobis motion, alleging that he had received ineffective assistance of counsel in the underlying federal criminal prosecution because: (i) his defense attorney erroneously advised him that a sentence of less than one year of actual time served would not have any negative consequences on his alien residence status, and

---

[2] Petitioner's warrant of removal indicates that he was removed from the United States on July 31, 2012, via a flight from Los Angeles. (Doc. No. 19-1 at 72–73.)

(ii) his defense attorney failed to advise him that the imposition of a restitution order in excess of $10,000 would result in a classification of his conviction as an aggravated felony, thereby resulting in immigration officials finding him to be removable from the United States.  (Doc. No. 1.)

On October 12, 2012, the court issued an order in this action finding that petitioner had adequately stated a claim for relief, ordering the United States to file a response to the petition, and directing attorney Jack Revvill, petitioner's defense counsel in the underlying federal criminal proceedings, to submit information pertaining to the representations made to petitioner concerning the immigration consequences of his entry of plea pursuant to the plea agreement with the government in June of 2001.  (Doc. No. 3.)

In response, attorney Revvill filed a declaration with the court under seal on April 7, 2014. (Doc. No. 6.)  On May 25, 2016, respondent United States responded by filing a motion to dismiss petitioner's writ of coram nobis and a motion for reconsideration of the court's October 12, 2012 order.  (Doc. No. 19.)  Petitioner has not replied to any of these filings.  Below, the court will first address the applicable legal standards and then turn to the government's motions.

## LEGAL STANDARDS

### A.    Writ of Coram Nobis

A writ of coram nobis is a remedy by which the court can correct errors in criminal convictions where other remedies are not available.  While Federal Civil Procedure Rule 60(b) abolishes various common law writs, including the writ of coram nobis in civil cases, the writ is still available in criminal proceedings where other relief is wanting.  *See United States v. Morgan*, 346 U.S. 502 (1954); *United States v. Chan*, 792 F.3d 1151, 1153 (9th Cir. 2015); *Korematsu v. United States*, 584 F. Supp. 1406, 1413 (N.D. Cal. 1984) ("[E]xtraordinary instances require extraordinary relief, and the court is not without power to redress its own errors"); *see generally United States v. Ayala*, 894 F.2d 425, 428 (D.C. Cir. 1990) ("[F]ederal courts may properly fill in the interstices of the federal post-conviction remedial framework through remedies available at common law").  The source of the court's power to grant coram nobis relief lies in the All Writs Act, 28 U.S.C. § 1651(a); *see also United States v. Monreal*, 301 F.3d 1127, 1132 (9th Cir. 2002).

To qualify for error coram nobis relief, four requirements must be satisfied:  (i) a more usual remedy is not available; (ii) valid reasons exist for not attacking the conviction earlier; (iii) adverse consequences exist from the conviction to satisfy the case or controversy requirement of Article III, and (iv) the error is of the most fundamental character.  *See Chan*, 792 F.3d at 1153; *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987); *see also Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002).

Under Ninth Circuit precedent, "petitions for a writ of *coram nobis* should be treated in a manner similar to [28 U.S.C.] § 2255 *habeas corpus* petitions."[3]  *Korematsu*, 584 F. Supp. at 1412 (citing *United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. 1981)).  In particular, whether an evidentiary hearing is required in resolving a claim presented by way of coram nobis petition is a determination that should be made in the same manner as in the context of a motion made under § 2255.  *See Taylor*, 648 F.2d at 573, n. 25 ("Whether a hearing is required on a coram nobis motion should be resolved in the same manner as habeas corpus petitions."); *Korematsu*, 584 F. Supp. at 1412 ("This Circuit has resolved that petitions for a writ of coram nobis should be treated in a manner similar to § 2255 habeas corpus petitions. . . . For example, § 2255 considerations apply in determining whether an evidentiary hearing is required.").

---

[3]  There is limited guidance as to the procedural rules applicable to petitions for writs of coram nobis.  *See Application of Civil or Criminal Procedural Rules in Federal Court Proceeding on Motion in Nature of Writ of Error Coram* Nobis, 53 A.L.R. Fed. 762 (1981); *see also United States v. Balistrieri*, 606 F.2d 216, 219–220 (7th Cir. 1979).  The Supreme Court has stated that a coram nobis petition is "a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil Proceeding." *Morgan*, 346 U.S. at 505.  Circuit courts have reached different conclusions about whether civil or criminal procedural rules apply to coram nobis proceedings.  *See Balistrieri*, 606 F.2d at 219–222 (canvasing decisions dealing with coram nobis petitions; noting the similarity between petitions for coram nobis relief and petitions under 28 U.S.C. § 2255; and concluding that it is "within the district court's discretion to apply the appropriate rules on the basis of the facts of each case."); *see also United States v. Mandanici*, 205 F.3d 519, 527 (2d. Cir. 2000) ("[T]he § 2255 procedure is often applied by analogy in coram nobis cases") (citation omitted); *United States v. Johnson*, 237 F.3d 751, 754–55 (6th Cir. 2001) (applying civil procedures); *United States v. Mills*, 430 F.2d 526, 528 (8th Cir. 1970) (applying Federal Rule of Appellate Procedure 4(b) to a coram nobis petition because "coram nobis is deemed a step in a criminal case").  Although, as noted above, the Ninth Circuit has stated that "petitions for a writ of coram nobis should be treated in a manner similar to § 2255 habeas corpus petitions," the court has not directly addressed the extent to which coram nobis proceedings are governed by civil rules, forms, and pleadings.  *See United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. 1981); *see also Korematsu*, 584 F. Supp. at 1412.

In reviewing a motion brought pursuant to § 2255, a federal court shall hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Zuno–Arce*, 339 F.3d 886, 889 (9th Cir. 2003); *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (citing 28 U.S.C. § 2255(b)). Evidentiary hearings are particularly appropriate when "claims raise facts which occurred out of the courtroom and off the record." *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989); *accord Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994). When a § 2255 movant raises a claim of ineffective assistance of counsel, the court should hold an evidentiary hearing unless "something in the record conclusively shows that [movant's] trial attorney was not ineffective." *Burrows*, 872 F.2d at 917. In deciding whether a § 2255 movant is entitled to an evidentiary hearing, the district court should determine whether, accepting the truth of movant's factual allegations, he could prevail on his claim. *Blaylock*, 20 F.3d at 1465. However, to be entitled to an evidentiary hearing the movant must provide specific factual allegations which, if true, state a claim on which relief under § 2255 could be granted. *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003); *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). The court may deny an evidentiary hearing on a § 2255 motion "if the petitioner's allegations, viewed against the record, fail to state a claim or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'" *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (citations omitted). These same principles then, guide the determination of whether an evidentiary hearing is necessitated in ruling upon a petition for a writ of coram nobis. *See Taylor*, 648 F.2d at 573; *see also United States v. Andrade-Larrios*, 39 F.3d 986, 991 (9th Cir. 1994); *Shah v. United States*, 878 F.2d 1156, 1158–1159 (9th Cir. 1989).

## B.  Motion for Reconsideration

District courts "possess[] the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles. v. Santa Monica Baykeeper*, 254 F. 3d 882, 885 (9th Cir. 2001) (citations and internal quotation marks omitted). A motion for reconsideration, however, "should not be granted . . . unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening

5

change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F. 3d 656, 665 (9th Cir. 1999) (citing *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F. 3d 1255, 1263 (9th Cir. 1993)). Reconsideration of a prior order is an extraordinary remedy "to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F. 3d 877, 890 (9th Cir. 2000) (citation omitted); *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F. 2d 364 n.5 (9th Cir. 1989) ("[T]he orderly administration of lengthy and complex litigation such as this requires the finality of orders be reasonably certain.").

## ANALYSIS

Respondent both moves for reconsideration of the October 12, 2012 order, in which the court found that petitioner had adequately stated a claim for coram nobis relief, and seeks dismissal of the pending petition for a writ of coram nobis. (Doc. No. 19.) Respondent advances the following arguments: (i) that petitioner cannot allege fundamental error sufficient to support his coram nobis petition; (ii) that petitioner waived his rights to collaterally attack his criminal conviction in his 2001 plea agreement; and (iii) that the equitable doctrine of latches bars plaintiff's petition for writ of coram nobis. (*Id.*)

### A.      Fundamental Error

Respondent first argues that petitioner cannot demonstrate his entitlement to coram nobis relief because he cannot make the requisite showing of fundamental error.

A coram nobis petitioner may show fundamental error by demonstrating that he received ineffective assistance of counsel ("IAC"). *See United States v. Kwan*, 407 F.3d 1005, 1014 (9th Cir. 2005); *United States v. Abramian*, No. CR 02–00945 MMM, 2014 WL 4702584, at *2 (C.D. Cal. Sept. 22, 2014); *see generally United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995) (explaining that the Sixth Amendment right to counsel is a fundamental right under the court's decision in *Hirabayashi*). To demonstrate IAC, a petitioner must show that (i) counsel's performance "fell below an objective standard of reasonableness," and (ii) the allegedly deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see also Kwan*, 407 F.3d at 1014; *Hamilton v. Ayers*, 583 F.3d 1100, 1129-30 (9th Cir. 2009) (explaining that counsel's performance must be evaluated based on the standards existing at the

time of performance); *Rocha v. United States*, Nos. CR 02–582 CBM, CV 12–3797 CBM, 2015 WL 92945, at *3 (C.D. Cal. Jan. 7, 2015) (same).

Here, respondent argues that petitioner cannot allege fundamental error because he cannot adequately plead IAC. (Doc. No. 19 at 4–8.) Respondent contends that defense counsel's performance did not fall below an objectively reasonable standard, and that petitioner's defense was not prejudiced by any allegedly deficient performance on the part of his counsel. (*Id.*)

### 1. Reasonableness of Attorney's Performance

The court will first consider whether, if petitioner's allegations were proven to be true, his defense counsel's performance fell below an objectively reasonable standard.

Attorneys representing non-citizens in criminal proceedings are required to uphold a number of duties to satisfy professional standards under *Strickland*. In 2010, the Supreme Court held that defense attorneys have a duty to correctly advise their clients of the risks of deportation associated with criminal convictions. *See Padilla v. Kentucky*, 559 U.S. 356, 367-69 (2010). Thereafter, the Supreme Court held that the duty of defense counsel recognized in *Padilla* does not apply retroactively to attorney conduct that occurred before 2010. *See Chaidez v. United States*, 568 U.S. 342, 347, 357 (2013); *see generally Teague v. Lane*, 489 U.S. 288 (1989) (discussing retroactivity of criminal procedure decisions).[4]

Several years prior to the Supreme Court's decision in *Padilla*, however, the Ninth Circuit had held that an attorney's affirmative misrepresentation of the immigration consequences of their plea did constitute deficient performance under *Strickland*. *United States v. Kwan*, 407 F.3d 1005, 1015–17 (9th Cir. 2005).[5] Moreover, the Ninth Circuit determined that the rule established

---

[4] The retroactivity of a rule described in a legal decision turns on the issue of novelty. *Chaidez*, 568 U.S. at 347 ("Teague makes the retroactivity of our criminal procedure decisions turn on whether they are novel"). If a decision announces a new rule, that rule does not have retroactive effect. *Id.* However, if the court applies a settled rule—that is, if it merely applies an existing principle to a different set of facts—then that rule applies retroactively, and a person may avail themselves of the decision on collateral review. *Id.*

[5] "*Padilla* was simultaneously broader and narrower than our decision in *Kwan*: broader in that *Padilla* reached affirmative misrepresentations and failure to advise, but narrower in that *Padilla* concerned only deportation whereas *Kwan* considered all immigration consequences." *United States v. Chan*, 792 F.3d 1151, 1154 (9th Cir. 2015).

in *Kwan* both survives *Padilla* and applies retroactively to conduct that occurred prior to 2005. *See Chan*, 792 F.3d at 1152; *see also United States v. Abramian*, No. CR 02-00945 MMM, 2014 WL 2586666, at *5 (C.D. Cal. June 10, 2014) (reviewing federal and state court decisions prior to 2002 concluding that counsel's affirmative misrepresentation of the immigration consequences of a criminal conviction could constitute ineffective assistance of counsel).

In his petition for coram nobis relief before this court, petitioner alleges that his counsel's performance was deficient on two grounds: (i) under *Padilla*, because his counsel failed to advise him of the immigration consequences of his 2002 conviction; and (ii) under *Kwan*, because his counsel affirmatively misinformed him that his guilty pleas would have no immigration consequences. (Doc. No. 1 at 2, ¶ 4.)

In this court's October 2012 order, the previously assigned district judge concluded that petitioner's allegations were sufficient to state a cognizable IAC claim for purposes of his coram nobis petition. (Doc. No. 3 at 4–7.) The court determined that the allegations stated a *Padilla* claim, after concluding that the professional obligations described in *Padilla* applied retroactively to counsel's conduct in 2001. (*See id.* at 5.)

In its pending motions, respondent contends that the court erred in finding that petitioner had alleged objectively unreasonable performance on the part of his defense counsel. Respondent argues that the alleged failure of counsel to advise of the deportation consequences of a guilty plea and criminal conviction was not grounds for an IAC claim in 2001, because the decision in *Padilla* does not apply retroactively. (*Id.* at 4.) Respondent also argues that petitioner's defense counsel did not misrepresent to petitioner the immigration consequences of the 2001 plea agreement or hold himself out as an expert on immigration issues. (*Id.*) In support of its arguments for dismissal of the pending petition, respondent cites the declaration of petitioner's defense counsel. (*Id.*)

Because petitioner entered into the plea agreement at issue in 2001, the court must assess counsel's performance in light of professional standards existing at that time. *See Hamilton*, 583 F.3d at 1129–30.

/////

8

At the time of its October 2012 order concluding that petitioner had adequately alleged that his attorney's performance was deficient under *Padilla,* the court did not have the benefit of the Supreme Court's 2013 decision in *Chaidez* holding that *Padilla* does not apply retroactively. *See Chaidez*, 568 U.S. at 347. In light of the decision in *Chaidez*, the undersigned now concludes that, in representing petitioner in 2001, counsel did not have the duty to advise petitioner of the immigration consequences of his plea, since that duty was not recognized until 2010 in *Padilla*. *See Chaidez*, 568 U.S. at 347; *see also United States v. Flores*, No. 89 CR 0056 L, 2013 WL 5670924, at *2 (S.D. Cal. Oct. 15, 2013) ("Defendant cannot avail himself of the writ of coram nobis to attack his prior conviction because . . . the relief he seeks is unavailable in light of the non-retroactivity of *Padilla*."). Petitioner therefore cannot allege a cognizable IAC claim premised on the holding in *Padilla*. *See id.* To the extent that the court's October 2012 order concluded otherwise, respondent's motion for reconsideration is granted and that aspect of the prior order is withdrawn.

However, petitioner also asserts that his counsel's performance was deficient under *Kwan*, alleging that his attorney erroneously advised him that his entry of plea and conviction could not impact his immigration status. (Doc. No. 1 at 2.) ("Petitioner attorney informed petitioner that serving an actual imprisonment less tha[n] twelve months . . . from sentence of twelve months and one day will not affect immigration and will help with immigration."). As noted above, the duties of and performance standards for counsel recognized in *Kwan* have retroactive application. *See Chan*, 792 F.3d at 1152. Here, at the time petitioner entered his guilty pleas, affirmatively misleading a client regarding the consequences of a plea and conviction provided the grounds for a cognizable IAC claim. *See Kwan*, 407 F.3d at 1017. Accordingly, petitioner's allegations that his counsel affirmatively provided him with misinformation regarding the immigration consequences of his plea pursuant to the plea agreement are sufficient under *Kwan* to state a cognizable IAC claim under the prevailing professional standards of practice in 2001. *See Kwan*, 407 F.3d at 1015–16 (finding IAC because petitioner's attorney held himself out as an expert regarding the immigration consequences of criminal convictions, and affirmatively misinformed petitioner about whether his guilty plea would render him deportable); *see also Abramian*, 2014

9

WL 2586666, at *5; *cf. Abramian*, 2014 WL 4702584, at *3 (finding that petitioner did not adequately plead fundamental error based on IAC, because "she neither alleges nor adduces evidence that her attorney affirmatively misadvised her concerning the immigration consequences of the conviction").

Respondent's arguments that petitioner cannot demonstrate affirmative misadvise on the part of his counsel are unpersuasive. In moving to dismiss the pending petition, the government has the burden of establishing that there is no genuine issue of material fact, and it is the "petitioner [who] is entitled to the benefit of favorable inferences." *Korematsu*, 584 F. Supp. at 1413; *see also United States v. Espinoza*, 866 F.2d 1067, 1069 (9th Cir. 1989) (reversing the denial of a § 2255 motion and remanding for expansion of the record and determination of the necessity of an evidentiary hearing). Here, respondent has offered some evidence, in the form of defense counsel's declaration, that petitioner was alerted to the immigration consequences of his guilty plea by his attorney. However, petitioner has alleged contrary facts in his petition. The court therefore concludes that based upon the record as it now exists there is a conflict as to whether petitioner's counsel affirmatively misadvised him of the immigration consequences of his guilty plea. In light of that conflict, the court cannot conclude that there is a "conclusive record" demonstrating that petitioner's counsel provided constitutionally adequate assistance under *Strickland*. *See Espinoza*, 866 F.2d at 1069; *cf. Velazquez v. United States*, No. CV–11–00820–PHX–RCB, 2014 WL 2738524, at *11 (D. Ariz. June 17, 2014) (concluding that "petitioner's unsubstantiated assertion that he 'was actually provided with incorrect information' . . . is not sufficient to bring his [IAC] claim within the ambit of *Kwan*").

### 2.    Prejudice

The court next considers respondent's arguments considering prejudice, the second prong of the IAC inquiry under *Strickland*.

To establish prejudice for purposes of an IAC claim, plaintiff must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Hedlund v. Ryan*, 854 F.3d 557, 582 (9th Cir. 2017)

(quoting *Strickland*, 466 U.S. at 694); *see also United States v. Chan*, No. CR 93-00583-RGK,

2   2015 WL 11438556, at *2 (C.D. Cal. Nov. 23, 2015) (in the coram nobis context).  Where IAC

3   leads a petitioner to accept a plea bargain, a different result means that "but for counsel's errors,

4   [petitioner] would either have gone to trial or received a better plea bargain."  *United States v.*

5   *Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015).

6           In his coram nobis petition, petitioner alleges that he was prejudiced by his attorney's

7   conduct because the result of his criminal proceedings would have been different absent his

8   counsel's deficient performance.  (Doc. No. 1 at 7–8.)  Petitioner has alleged that he would have

9   sought different terms in his plea agreement with respect to the period of confinement and the

10  restitution amount, thereby avoiding immigration consequences, or elected to go to trial if he had

11  not received misinformation from his counsel.  (*Id.* at 7-8.)  In its October 2012 order, the court

12  concluded that these allegations were sufficient to state a claim with respect to the prejudice

13  prong under *Strickland*.  (Doc. No. 3 at 3.)

14          Respondent argues that the court erred in its prior finding that petitioner adequately

15  alleged prejudice.  (Doc. No. 19 at 4–6.)  Respondent contends that there was no link between

16  alleged misadvice given by defense counsel and petitioner's deportation, because his deportation

17  was on grounds independent from those related to the alleged misinformation provided by his

18  counsel,[6] and because petitioner's subsequent convictions in 2007 (California) and 2009 (Nevada)

19  would have also rendered him deportable in any event.  (*Id.* at 6.)  In support of these arguments

20  for dismissal, respondent cites the following:  (i) a declaration of Jackie Lovato, a Deportation

21  Officer with the U.S. Immigration and Customs Enforcement ("ICE") and the custodian of

22  petitioner's alien immigration file ("A-file"), (Doc. No. 19-1 at 1–3); (ii) a transcript of the oral

23  decision and corresponding order from the immigration judge who found petitioner removable,

24  (*Id.* at 5–16); (iii) copies of written opinions relating to petitioner from the Board of Immigration

---

25  [6]  Respondent argues that petitioner's deportation was based on the following grounds:

26  (i) commission of a crime involving moral turpitude within five years of admission, under 8
U.S.C. §1227(a)(2)(A)(i); and (ii) commission of two crimes involving moral turpitude not

27  arising out of a single scheme, under 8 U.S.C. § 1227(a)(2)(A)(iii).  (*Id.*)  Respondent also
contends that petitioner's 2002 mail fraud conviction only partially affected his ability to cancel

28  his removal.  (*Id.*)

appeals, dated June 2011 and July 2011 (*Id.* at 18–31); (iv) a copy of the executed warrant of removal for petitioner, (*Id.* at 72–73); and (v) court documents from the Merced County Superior Court related to petitioner's 2006 burglary conviction, (*Id.* at 33–50); from the Fresno County Superior Court related to his 2007 conviction for non-sufficient fund check, (*Id.* at 51–57); and from the Clark County Nevada State District Court related to his 2009 conviction for felony theft, (*Id.* at 59–70).

Respondent's arguments for reconsideration in this regard are unpersuasive. Respondent does not directly contest the court's prior conclusions concerning the outcome of petitioner's criminal proceedings, and instead addresses the outcome of petitioner's immigration proceedings. Respondent conflates two separate inquiries: the *Strickland* prejudice inquiry applicable to IAC claims, which focuses on whether an attorney's deficient performance would have impacted the results of a client's criminal proceedings; and the *Hirabayashi* adverse consequences inquiry applicable to coram nobis petitions, which focuses on whether conviction involving fundamental error led to adverse consequences for petitioner. *See generally Strickland*, 466 U.S. at 687–88; *Hirabayashi*, 828 F.2d at 604. In doing so, respondent fails to present grounds for reconsidering the conclusions reached in the court's October 2012 order as to either issue.

As stated above, a petitioner seeking to demonstrate prejudice under *Strickland* must show that his attorney's deficient performance impacted the results of the criminal proceedings—in the context of plea agreements, that the petitioner would have "gone to trial or received a better plea bargain" absent counsel's errors. *Rodriguez-Vega*, 797 F.3d at 788 (quoting *United States v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004)); *see also Strickland*, 466 U.S. at 694; *United Sates v. Leonti*, 326 F.3d 1111, 1122 (9th Cir. 2003). Prejudice under *Strickland* does not depend on the extent to which those criminal proceedings involved collateral immigration consequences. *Id.*; *But see Rocha*, 2015 WL 92945, at *4 (finding petitioner failed to demonstrate prejudice because, "[h]ad Petitioner refused to accept the plea agreement, there is no evidence that Petitioner would have been successful at trial or otherwise avoided the immigration consequences he now faces"). Here, petitioner has alleged that absent his counsel providing him with misinformation concerning the immigration consequences of his 2001 guilty plea, he would have negotiated a

different plea agreement to avoid those consequences or would have elected to instead go to trial. "That an alien charged with a crime . . . would factor the immigration consequences of conviction into deciding whether to plea or proceed to trial is well-documented." *Magana-Pizano v. INS*, 200 F.3d 603, 612 (9th Cir. 1999); *see also United States v. Hubenig*, No. 6:03-mj-040, 2010 WL 2650625, at *9 (E.D. Cal. July 1, 2010) ("A reasonable person could certainly conclude that the risk of . . . punishment—even considering the very unlikely event that the statutory maximum penalty might be imposed—was worth the possibility of avoiding deportation, a punishment that the Supreme Court has characterized as "the equivalent of banishment or exile.") (citing *Delgadillo v. Carmichael*, 332 U.S. 388, 390–91 (1947)). The pro se allegations of the petition before this court are thus a sufficient basis upon which to claim prejudice under *Strickland*. *See Kwan*, 407 F.3d at 1018.

In contrast, to establish adverse consequences to satisfy the case or controversy requirement of Article III as required to obtain coram nobis relief, a petitioner must demonstrate that a conviction involving fundamental error led to adverse consequences. *See Hirabayashi*, 828 F.2d at 604. The petitioner need not show that the fundamental error itself generated adverse consequences. *See, e.g.*, *Kwan*, 407 F.3d at 1014 (separately analyzing the question of whether the petitioner faced the possibility of deportation as a result of his conviction and whether he received IAC); *United States v. Koertel*, No. 2:13-cr-00346-KJM, 2016 WL 4524860, at *3 (E.D. Cal. Aug. 29, 2016) (same). The possibility of deportation is an adverse consequence of a criminal conviction sufficient to satisfy Article III's case or controversy requirement. *See Kwan*, 407 F.3d at 1014; *see also Park v. California*, 202 F.3d 1146, 1148 (9th Cir. 2000); *United States v. Krboyan*, Nos. CV–F–10–2016 OWW, CR–F–02–5438 OWW, 2010 WL 5477692, at *11 (E.D. Cal. Dec. 30, 2010). Here, it is uncontested that the petitioner faced the possibility of deportation, and was in fact actually deported, as a result of his 2002 convictions. (Doc. No. 19 at 5.) No more is required to show adverse consequences sufficient to satisfy Article III's case or controversy requirement. *See Kwan*, 407 F.3d at 1014; *see also Park*, 202 F.3d at 1148; *Krboyan*, 2010 WL 5477692, at *11.

/////

Accordingly, the court concludes that the pro se petitioner has adequately alleged fundamental error and adverse consequences sufficient to state a cognizable claim for coram nobis relief. In moving for reconsideration, respondent has not met its burden of showing that relief from the court's prior order is warranted based on any deficiencies with the allegations of the petition. *See, e.g.*, *Cross v. Benedetti*, No. 3:08–CV–00403, 2012 WL 3252863, at *1 (D. Nev. Aug. 7, 2012) (denying reconsideration where the court "would have reached the same conclusion on the record presented in this case" even absent an intervening change in the law); *Norwood v. Vance*, No. CIV S–03–2554 GEB GGH P, 2011 WL 6293189, at *3 (E.D. Cal. Dec.15, 2011) (same), *report and recommendation adopted*, 2012 WL 394227 (E.D. Cal. Feb.6, 2012), *aff'd*, 517 F. App'x 557 (9th Cir. 2013). Respondent's motions for reconsideration and dismissal on this basis will therefore be denied.

### B.    Plea Agreement Waiver of Collateral Attack Rights

Respondent also moves to dismiss the pending petition based on the waiver of appellate rights provision of petitioner's 2001 plea agreement.

The right to appeal or to seek collateral relief from a conviction may be waived in a plea agreement. *See United States v. Lo*, 839 F.3d 777, 783 (9th Cir. 2016); *United States v. Portillo–Cano*, 192 F.3d 1246, 1249 (9th Cir.1999); *United States v. Vences*, 169 F.3d 611, 613 (9th Cir. 1999) (explaining that a valid waiver deprives the court of jurisdiction to entertain a petition for post-conviction review). Such a waiver is only enforceable if: (i) the waiver's language encompasses the grounds raised on review, and (ii) the waiver was knowing and voluntary. *See Lo*, 839 F.3d at 783; *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947 (9th Cir. 2007 (en banc); *see also United States v. Bibler*, 495 F.3d 621, 623–24 (9th Cir. 2007). Consequently, a plea agreement that waives appellate rights "is unenforceable with respect to an IAC claim that challenges the voluntariness of the waiver" itself. *Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005); *Davies v. Benov*, 856 F.3d 1243, 1246 n.2 (9th Cir. 2017) ("Claims that the plea or waiver itself was involuntary or that ineffective assistance of counsel rendered the plea or waiver

/////

involuntary, however, may not be waived."); *see also United States v. Chavez*, No. CR S–09–
0540 GEB DAD, 2013 WL 4780510, at *2 (E.D. Cal. Sept. 5, 2013).

The government argues dismissal is warranted because petitioner Rianto waived the right
to appeal or collaterally attack his plea, conviction and sentence in his 2001 plea agreement.
(Doc. No. 19 at 3.)  Respondent cites the following language of the agreement

> Defendant knowingly and voluntarily waives his Constitutional and
> statutory rights to appeal his plea, conviction and sentence. This
> waiver of appeal includes, but is not limited to, an express waiver
> of defendant's right to appeal his plea, conviction and sentence on
> any ground, including any appeal right conferred by 18 U.S.C.
> § 3742, and defendant further agrees not to contest his plea,
> conviction and sentence in any post-conviction proceeding,
> including but not limited to a proceeding under 28 U.S.C. § 2255.

(*Id.*)

Petitioner's plea agreement included a specific waiver of rights to pursue a post-
conviction collateral attack on his conviction and sentence.  His petition for a writ of coram nobis
is a collateral attack on a judgment of conviction falling within the scope of this waiver.  *See
Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994) (recognizing that a coram nobis
petition is a "collateral attack on a criminal conviction"); *see also Ballard v. United States*, No.
CIV S-07-2527 LKK DAD P, 2010 WL 715683, at *6 (E.D. Cal. Feb. 26, 2010).  However, the
court has found that petitioner has adequately alleged IAC related to his 2001 plea agreement and
2002 judgment of conviction.  Petitioner's allegations thus support a finding that the plea and
waiver were involuntary due to the IAC, and that the waiver of the right to appeal or collaterally
attack the conviction is unenforceable.  *See Lampert*, 422 F.3d at 870–71; *United States v. Torres*,
828 F.3d 1113, 1125 (9th Cir. 2016) ("an appeal waiver does not deprive a defendant of a
constitutional ineffective assistance of counsel claim."); *see also Porter v. Munoz*, No. 14-cv-
05034-TEH, 2017 WL 3021022, at *5 (N.D. Cal. July 17, 2017) ("It is undisputed that even after
entering into an agreement that waives the right to pursue habeas corpus relief, a prisoner may
assert an ineffective assistance of counsel claim regarding the advice he received regarding the
agreement, as well as a claim challenging the voluntariness of the agreement itself.").

/////

Accordingly, the court concludes that the waiver of appellate or collateral review included in petitioner's 2001 plea agreement does not divest this court of jurisdiction over his petition alleging IAC in connection with his entry of plea pursuant to that agreement. *Cf. United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. 1981) (finding that summary adjudication was appropriate in coram nobis context where the record conclusively demonstrated that petitioner was not entitled to relief as to his IAC claim).

### C.    Laches

Respondent next contends that the petition for a writ of coram nobis should be dismissed because the equitable doctrine of laches bars the petition. (Doc. No. 19 at 7–8.)

The timeliness requirement for a writ of error coram nobis places a burden on the petitioner to affirmatively demonstrate valid reasons why the challenge was not brought sooner. *See Hirabayashi*, 828 F.2d at 604 (requiring that "valid reasons exist for not attacking the conviction earlier."). In considering the timeliness of the seeking of relief, the court should not consider prejudice to the government related to any delay in bringing the challenge. *See United States v. Riedl*, 496 F.3d 1003, 1007–1008 (9th Cir. 2007). However, if the petitioner alleges facts demonstrating valid reasons for the petition not having been brought sooner, then the government may seek to bar the petition on the ground of laches.[7] *See Riedl*, 496 F.3d at 1007–08; *see also Rodriguez-Lugo v. United States*, 458 Fed. Appx. 688, 689 (9th Cir. 2011).[8]

---

[7]  Federal courts have reached inconsistent conclusions about whether the doctrine of laches serves as a defense to coram nobis petitions, as well as to the showing a respondent must make to demonstrate the applicability of laches. *See* Annotation, Delay as affecting right to coram nobis attacking criminal conviction, 62 A.L.R.2d 432, (1958) (surveying decisions that reach conflicting conclusions on these issues); *compare Haywood v. United States*, 127 F. Supp. 485, 488 (S.D.N.Y. 1954) ([I]f laches were to constitute an estoppel or defense it would in effect make dead letter of the ancient writ."), *and United States v. Liska*, 409 F. Supp. 1405, 1407 (E.D. Wis. 1976) ("It should be beyond cavil, however, that laches is not available to the United States as a defense to a petition for the writ of error coram nobis"); *with United States v. Dyer*, 136 F.3d 417, 427–428 (5th Cir. 1989) (describing the doctrine of laches as a defense to a coram nobis petition). In any event, the Ninth Circuit has held that the doctrine of laches is a defense to a coram nobis petition, and has distinguished the laches doctrine from the second coram nobis requirement of timeliness as described above. *See Riedl*, 496 F.3d at 1007–08.

[8]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

To assert laches, however, the respondent "first must make a prima facie showing of prejudice." *Telink, Inc.*, 24 F.3d at 47; *see also Riedl*, 496 F.3d at 1008. "If the government meets that burden, the burden of production of evidence then shifts to the petitioner to show either that the government actually was not prejudiced or that the petitioner exercised reasonable diligence in filing the claim." *Telink, Inc.*, 24 F.3d at 47; *see also Riedl*, 496 F.3d at 1008; *Kwan*, 407 F.3d at 1013.

Here, petitioner filed his motion for a writ of coram nobis in April 2012, over ten years after the entry of his guilty plea in June of 2001. (Doc. No. 1.) Therein, petitioner asserted that he did not petition for a writ of coram nobis earlier because he was not aware of the immigration consequences associated with his 2001 plea agreement and entry of plea until his detention in 2010. (*Id.* at 4.) Indeed, petitioner alleges that he was actually granted renewal of his alien resident card by U.S. immigration officials in 2009. (*Id.* at 5.) In support of these contentions, petitioner submitted the following evidence: (i) a copy of his 2009 application to replace his alien registration card (*Id.* at 21); and (ii) a copy of the renewed permanent resident card he received in 2009, (*Id.* at 22).

In its October 2012 order, this court concluded that there was "nothing to indicate that Petitioner lacks valid reasons for not having brought the challenge to his conviction earlier," but that it "lack[ed] information necessary at this time to determine whether laches would apply to preclude Petitioner's claim." (Doc. No. 3 at 10.)

Respondent now argues that the pending petition is barred by the doctrine of laches, and that petitioner did not have valid reasons for delay in the filing his coram nobis petition. (Doc. No. 19 at 7–8.) Respondent asserts that it would be significantly prejudiced in mounting a retrial of the underlying criminal case because over sixteen years have passed since petitioner's crimes were committed, the evidence in support of the charges may no longer exist, and the prosecutors on the original case have both been since elevated to the bench. (*Id.* at 7–8.) Respondent also argues that petitioner was advised of the potential immigration consequences associated with his 2006 and 2007 state court convictions, and thus should have also been aware of potential immigration issues associated with his 2002 federal convictions at least as early as 2006. (*Id.* at

17

1   7.)  In support of this argument, respondent provides documents signed by petitioner

2   acknowledging his understanding of potential immigration consequences connected with his 2006

3   and 2007 convictions in state court.  (Doc. No. 19-1 at 33–50, 51–57).

4         In asserting the defense of laches, respondent bears the burden of establishing that it

5   would be prejudiced by petitioner's delay in seeking coram nobis relief.  *Riedl*, 496 F.3d at 1008.

6   Here, the government has invoked evidentiary prejudice as a basis for applicability of the laches

7   doctrine.[9]  "In making a determination of prejudice, the effect of the delay on . . . the

8   government's ability to mount a retrial are relevant."  *Tel. Corp.*, 518 F.2d at 926.  Because

9   petitioner's entry of plea and conviction occurred over ten years prior to the filing of this petition,

10  it is reasonable to assume that the government would face difficulty locating witnesses and

11  evidence and in re-litigating its case.  *See United States v. Madrigal-Maya*, No. 92–MJ–8003–

12  (PCL)–3, 2013 WL 1289265, at *3 (S.D. Cal. Mar. 25, 2013) (finding that the government was

13  "undoubtedly prejudiced" by a twenty-year delay between the filing of petitioner's coram nobis

14  petition and the original criminal conviction); *see also United States v. Indelicato*, No. CR-85-

15  0078-EMC, 2015 WL 5138565, at *5 (N.D. Cal. Sept. 1, 2015); *Martinez v. United States*, 90 F.

16  Supp. 2d 1072, 1076 (D. Haw. 2000).  Accordingly, the court concludes that respondent has met

17  its burden of showing it would be prejudiced by petitioner's delay in seeking relief in this case.

18        However, as noted by the court in its October 2012 order, petitioner has offered evidence

19  with his petition indicating that he exercised reasonable diligence in seeking relief.  (Doc. Nos. 1

20  at 4–5; 3 at 10.)  Courts in this circuit have identified reasonable diligence as having been

21  exercised when a petitioner pursues coram nobis relief reasonably soon after learning of a

22  fundamental error in his criminal proceedings.  *See Kwan*, 407 F.3d at 1013 (finding that

23  petitioner demonstrated reasonable diligence in pursuing coram nobis relief when he filed his

24  petition after learning of deportation proceedings); *Telink, Inc.*, 24 F.3d at 47 (stating that a

─────────────────────────

25  [9]  "Courts have recognized two chief forms of prejudice in the laches context—evidentiary and
26  expectations based."  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001).  Evidentiary
    prejudice relates to the dissipation or degradation of evidence over time, whereas expectations
27  prejudice occurs when respondents take actions or suffer consequences that they would not have
    absent delay.  *See Danjaq LLC*, 263 F.3d at 955; *Jackson v. Axton*, 25 F.3d 884, 886 (9th Cir.
28  1994).

                                              18

petitioner exercised reasonable diligence if he filed a petition within one year of learning of an error).  Here, petitioner alleges that he was not aware of any immigration consequences associated with his entry of plea in 2001 and entry of judgment in 2002 until he was detained for deportation in October 2010.  (Doc. No. 1 at 4.)  Petitioner also offers evidence in support of this contention—his 2009 application for a renewed alien resident card, and the subsequent approval of his application by U.S. immigration officials.  (*Id.*)  Finally, petitioner has presented evidence that he pursued relief shortly after being detained for deportation by filing a motion under 28 U.S.C. § 2255 in February of 2011.  (*Id.* at 1; 10–15.)  In light of this evidence, the court concludes that petitioner has met his burden of showing that he "exercised reasonable diligence in filing the claim." *Telink, Inc.*, 24 F.3d at 47; *see also Kwan*, 407 F.3d at 1013; *Krboyan*, 2010 WL 5477692, at *5–6; *cf. Indelicato*, 2015 WL 5138565, at *5 (finding that laches barred a petition for coram nobis when petitioner "admit[ted] that between 1987 and 2012 he undertook no steps whatsoever to challenge his conviction in any forum"); *United States v. Risquez*, No. 84-CR-0254-JM, 2012 WL 3069323, at *5 (S.D. Cal. July 27, 2012) (finding that laches barred the coram nobis petition because the defendant "has had knowledge of the consequences of his conviction for many years"); *Martinez*, 90 F. Supp. 2d at 1075–76 (finding that laches precluded the coram nobis petition because "Petitioner failed to appeal the District Court's decision on his Speedy Trial rights, neglected to file a § 2255 petition, did not attack his 1986 conviction when later sentenced for a subsequent conviction, and has waited over six years to file the instant motion.").

Respondent's arguments concerning petitioner's 2006 and 2007 state court convictions do not present grounds for reconsidering the court's October 2012 order on the issue of laches.  When determining whether a petitioner exercised reasonable diligence in pursuing coram nobis relief, courts consider the time that the petitioner learned of the error related to the specific criminal conviction being challenged.  *See Telink, Inc.*, 24 F.3d at 47 (stating that petitioners should have commenced post-conviction relief proceedings in 1988 because they "learned in 1987, when *McNally* was decided, that the indictment under which they were convicted was tainted with *McNally* problems); *see also Martinez*, 90 F. Supp. 2d at 1075–76 (citing numerous

cases in which courts have found valid reasons for delay in pursuing coram nobis relief). Specifically, in cases where petitioners have asserted IAC based on *Kwan* violations, courts have examined the time the petitioner learned of the misinformation associated with that particular conviction. *See Kwan*, 407 F.3d at 1013–1014; *Krboyan*, 2010 WL 5477692, at *6–7. Respondent has not provided, and the court has not identified, any decision holding that once a criminal defendant learns of adverse immigration consequences associated with one conviction, that defendant is on notice of the potential adverse immigration consequences associated with another, independent criminal conviction for purposes of pursuing coram nobis relief.

Here, petitioner has presented evidence that his attorney affirmatively misadvised him as to the immigration consequences of his entry of plea in 2001 and 2002 judgment of conviction, and that he only learned of these consequences in 2010. This is sufficient to show reasonable diligence in pursuing coram nobis relief, thereby precluding dismissal of the petition based on the doctrine of laches. *See Telink, Inc.*, 24 F.3d at 47; *Kwan*, 407 F.3d at 1013; *Krboyan*, 2010 WL 5477692, at *5–6.

## CONCLUSION

Accordingly, for all the reasons stated above:

1. Respondent's motion for reconsideration (Doc. No. 19) is granted in part and denied as indicated above;

2. Respondent's motion to dismiss (Doc. No. 19) is denied; and

3. The matter is set for Status Conference on October 3, 2017, at 9:30 a.m. in Courtroom No. 5. Both petitioner and respondent are directed to file status reports in writing with the court no later than September 19, 2017, proposing a schedule for the filing of a motion for evidentiary hearing or expansion of the record and merits briefing in this action, as well as any other matters deemed relevant to the expeditious resolution of the pending petition for writ of coram nobis. Petitioner is cautioned that any failure on his part to file a status report no later than September 19, 2017, as required by this order, will result in a

/////

/////

dismissal of this action due to his failure to prosecute this action[10] and failure to abide by the court's order.

IT IS SO ORDERED.

Dated: __**August 4, 2017**__

_____
UNITED STATES DISTRICT JUDGE

---

[10] As noted above, petitioner did not oppose or in any other way respond to respondent's motions for reconsideration and dismissal. Moreover, petitioner's only filing in connection with this action has been the pro se petition he filed on April 4, 2012.